UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TESSA AVIE, KEVA BOURGEOIS, HENRI BRAGGS, and BRIAN CLARK a/k/a DA SHOWSTOPPAZ** | **CIVIL ACTION NO.** |
| *Plaintiffs,* | **SECTION           DIVISION** |
| **versus** | **DISTRICT JUDGE** |
| **BEYONCÉ KNOWLES CARTER; PARKWOOD ENTERTAINMENT, LLC; SONY MUSIC ENTERTAINMENT; SHAWN CARTER A/K/A JAY-Z; CHRISTOPHER ALAN STEWART A/K/A TRICKY STEWART; NASH TERIUS YOUNGDELL A/K/A THE DREAM; FREDDIE ROSS, JR., A/K/A BIG FREEDIA; KOBALT MUSIC PUBLISHING LLC; ADAM J. PIGOTT A/K/A BLAQNMILD; J.     MUSICAL GENIUSES RECORDS, LLC; OAKLAND 13 MUSIC; WARNER – TAMMERLANE PUBLISHING CORPORATION; WC MUSIC CORPORATION, SPIRIT MUSIC PUBLISHING; AMPLIFY, INC.; AND ABC INSURANCE COMPANY** | **MAGISTRATE JUDGE** |
| | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT, UNFAIR TRADE PRACTICES, AND UNJUST ENRICHMENT

**NOW INTO COURT**, through undersigned counsel, comes Petitioners, Tessa Avie, Keva

Bourgeois, Henri Braggs, and Brian Clark a/k/a Da Showstoppaz, and file this lawsuit for willful

copyright infringement, unfair trade practices, and unjust enrichment against Defendants, Beyoncé

Knowles Carter, *et al*, for infringement and misappropriation of their copyrighted works, and other intellectual property. Plaintiffs aver as follows:

## I.    PRELIMINARY STATEMENT

1.

Defendants, Beyoncé Knowles Carter, Big Freedia, Parkwood Entertainment, LLC, Sony Music Entertainment, and others produced, distributed, publicly performed and otherwise used and exploited the actual words, melody, and musical arrangement created by Tessa Avie, Keva Bourgeois, Henri Braggs, and Brian Clark a/k/a Da Showstoppaz (hereinafter collectively referred to as "Da Showstoppaz" or "Plaintiffs") "Release A Wiggle," without authorization in the extremely popular "Break My Soul"[1] master recording, composition and video, separately and as embodied in the motion picture of the "Renaissance: A Film by Beyoncé," and in theatrical and other live performances. Defendants used Plaintiffs' words, melody, and musical arrangement from their copyrighted works to create an album as homage to "uncle Johnny" who exposed the music and culture of the LGBTQ community of greater New Orleans, of which three members are strongly affiliated with themselves, all displayed in its full force—the tone, actual words, melody, musical arrangement of bounce music.[2]

Da Showstoppaz's contribution to the New Orleans bounce music scene and usage of the actual words, melody, and musical arrangement of the "Release A Wiggle" were deliberately taken by Big Freedia in the recording of "Explode," which was subsequently heavily sampled by Mrs. Carter in the master recording of "Break My Soul."[3] Defendants have not acknowledged their

---

[1] Plaintiffs will submit the audio and video recordings of "Explode" and "Break My Soul" to the Court on a flash drive.

[2] da showstoppaz-release a wiggle orig, (March 2, 2014) https://www.youtube.com/watch?v=OqZj0TlrSCk&ab_channel=jus1key.

[3] Big Freedia "Explode" (Official Video) (June 13, 2014) https://youtu.be/Pa5IV_3fVfk?si=FErX0zMxh0Xf-4I2.

contribution, obtained permission to use their copyrighted lyrics, melody, and musical arrangement, nor provided compensation to Da Showstoppaz's. While Mrs. Carter, Big Freedia, Parkwood, Sony, and others have received many accolades and substantial profits from "Explode" and "Break My Soul" and the "Renaissance" album, the "Renaissance World Tour," and the "Renaissance: A Film by Beyoncé," Da Showstoppaz's have received nothing—no acknowledgment, no credit, no remuneration of any kind.

Plaintiffs, following notice and amicable demand, bring this action for the deliberate taking of their work, to recover damages, and to ask that Defendants be required to substantiate the ill-gotten profits attributable to their infringement, and cease and desist their continued unauthorized use of their works, provide credit and compensation rights, assets and interests, including but not limited to ownership interests and copyrights, and the right to obtain, administer and enforce copyrights.

## II.   SUBSEQUENT CLAIMS

### 2.

As set forth more fully below, pursuant to Fed. R. Civ. P. 18, Plaintiffs aver that various state law claims are qualitatively different than their infringement claims and Big Freedia should be found liable for under Louisiana's unjust enrichment and Unfair and Deceptive Trade Practices Act (LUTPA).

### 3.

Big Freedia engaged in deceptive trade practices when deliberately taking the Plaintiffs' copyrighted works. These acts and omissions conducted by Big Freedia are intentional violations of LUTPA, through which Plaintiffs are entitled to all damages sustained, statutory penalties, and attorneys' fees pursuant to La. R.S. 51:1409.

## III.   **PARTIES**

4.

Plaintiffs made herein are the following:

A.   Tessa Avie **(**hereinafter referred to as "Ms. Avie"), is a natural person of the full age of majority, residing in and domiciliary of St. Charles Parish, State of Louisiana;

B.   Keva Bourgeois (hereinafter referred to as "Ms. Bourgeois"), is a natural person of the full age of majority, residing in and domiciliary of St. Charles Parish, State of Louisiana;

C.   Henri Braggs (hereinafter referred to as "Ms. Braggs"), is a natural person of the full age of majority, residing in and domiciliary of Orleans Parish, State of Louisiana; and,

D.   Brian Clark (hereinafter referred to as "Mr. Clark"), is a natural person of the full age of majority, residing in and domiciliary of Broward County, State of Florida.

5.

At all times herein, during the creation and production of "Release A Wiggle" on or about July 19, 2002, Plaintiffs were at all times located in the greater New Orleans area.

6.

Plaintiffs own a protectable copyright interest, both in the musical composition and the sound recording, to Da Showstoppaz's original and unique works, "Release A Wiggle" (Copyright Office Registration Number PA0002396076). Plaintiffs have also registered this work with the Copyright Office as a Sound Recording as Copyright Number SRu001515047, which include the unique and original lyrics and words that appear in Defendants' works, "Explode," "Break My Soul," "Renaissance," the "Renaissance World Tour," and the "Renaissance: A Film by Beyoncé." Plaintiffs will submit Plaintiffs audio recordings at issue to the Court on a flash drive. Plaintiffs will also submit the audio and video recordings of "Explode" and "Break My Soul" and the "Renaissance: A Film by Beyoncé" to the Court on a flash drive.

7.

Made Defendants herein are the following:

A.  Beyoncé Knowles Carter, is a resident of Los Angeles, California, and was the Executive Producer of the "Renaissance" audio recording. Beyoncé Knowles Carter was credited as one of the writers of "Break My Soul." Mrs. Carter was also one of the producers of "Break My Soul" and was credited for vocal production of "Break My Soul." Ms. Carter owns a home in New Orleans, Louisiana, through her businesses, Parkwood Entertainment, LLC and Sugarcane Park, LLC. Beyoncé Knowles Carter, *et al*, created, recorded, performed, produced and distributed the music video and sound recording known as "Break My Soul" and the music video and sound recording known as "Renaissance", which includes "Break My Soul," the "Renaissance World Tour" and the "Renaissance: A Film by Beyoncé" performances and other performances;

B.  Shawn Carter, a/k/a Jay-Z, is a resident of Los Angeles, California, according to the credits published by defendants, and is affiliated with ASCAP, who is credited with writing and producing the sound recording known as "Break My Soul" and the motion picture "Renaissance: A Film by Beyoncé" which includes the "Renaissance World Tour" performances and other performances;

C.  Christopher Alan Stewart, a/k/a Tricky Stewart, is a resident of Alpharetta, Georgia according to the credits published by defendants, and is affiliated with ASCAP, who is credited with writing and producing the sound recording known as "Break My Soul," which includes the "Renaissance World Tour" performances and other performances;

D.  Nash Terius Youngdell, a/k/a The Dream, is a resident of Los Angeles, California, according to the credits published by defendants, and is affiliated with ASCAP, who is credited with writing and producing the sound recording known as "Break My Soul," which includes the "Renaissance World Tour" performances and other performances;

E.  Parkwood Entertainment, LLC, which licensed and produced the "Renaissance" album as well as the "Renaissance: A Film by Beyoncé", is a Nevada limited liability company, domiciled in New York State, which purposely and regularly conducts business in New Orleans, Louisiana, including owning immovable property in New Orleans, through its wholly-owned subsidiary, Sugarcane Park, LLC;

F.  Sony Music Entertainment, is a Delaware corporation, domiciled in the State of New York, which is the owner or parent company of Columbia Records, which licensed and; and distributed the "Break My Soul" and "Renaissance" audio recordings;

G.  Freddie Ross, Jr., a/k/a Big Freedia, is a resident of New Orleans, Louisiana, according to the credits published by defendants, and is affiliated with BMI, who is credited with writing and producing "Break My Soul" as well as background performance vocals. Big Freedia was the Executive Producer of the "Explode" video and audio recording. Big Freedia was one of the writers and composers of "Explode." Big Freedia was also one of the producers of "Explode" and was credited for vocal production of "Explode";

H. Kobalt Music Publishing LLC, with offices in New York City, is or was a publisher of works by Freddie Ross, Jr. a/k/a/ Big Freedia under an Exclusive Recording Agreement, which purposely and regularly conducts business in New Orleans, Louisiana, through its wholly-owned subsidiary, Girl Down, based in New Orleans, Louisiana;

I. Adam J. Pigott, a/k/a BlaqNmilD, is a person domiciled in New Orleans, Louisiana, is principal of Musical Geniuses Records, LLC, according to the credits published by defendants, and is affiliated with BMI, who is credited with writing and producing "Break My Soul" song, audio and video recordings. BlaqNmilD was credits, according to BMI, as the writer and composer of the "Explode" video and audio recording;

J. Musical Geniuses Records, LLC is a Louisiana limited liability company domiciled in New Orleans, Louisiana, having Adam James Pigott as principal, who is BlaqNmilD's publishing entity;

K. WC Music Corporation, a California corporation, domiciled in Los Angeles, California, is one of the publishers of "Break My Soul", according to the credits published by defendants, and is affiliated with ASCAP. WB Music Corporation is the ASCAP publisher entity of Warner Music Group and is affiliated with Warner-Tamerlane Publishing Corporation. WC Music Corporation administers and controls rights to "Break My Soul" on behalf of itself and Oakland 13 Music and Carter Boys Music;

L. Warner – Tamerlane Publishing Corporation, a California corporation, domiciled in Los Angeles, California, is one of the publishers of "Break My Soul" and is affiliated with BMI. Warner-Tamerlane is the BMI publisher entity of Warner Music Group and is affiliated with WC Music Corporation;

M. Oakland 13 Music, the domicile of which is presently unknown, which was one of the publishers of "Break My Soul" and is affiliated with ASCAP. Upon information and belief, Oakland 13 Music is the publishing entity of Ms. Carter;

N. Spirit Music Publishing, the domicile of which is presently unknown, which was one of the publishers of "Break My Soul" and is affiliated with ASCAP. Upon information and belief, Levels to This Music is the publishing entity of Mr. Carter;

O. Amplify, Inc., a New York City, New York corporation, upon information and belief, is an American independent film distributor, its wholly-owned subsidiary Variance Films, is used of the "Renaissance: A Film by Beyoncé" and is affiliated with Parkwood Entertainment, LLC;

hereinafter collectively referred to as "Defendants."'

8.

The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

9.

All of Plaintiffs' claims stated herein are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns.

10.

Upon information and belief, insurance companies, which are presently unknown, issued policies of insurance to Defendants which provide coverage and are liable for Plaintiffs' claims. Such insurance companies, referred to as ABC Insurance Company, are sued directly under the Louisiana Direct Action statute, La. R.S. 22:1269.

11.

That said Defendants are justly and truly indebted unto the petitioners made Plaintiffs in Section III, paragraph 4, individually, jointly and *in solido*, for such damages as will fully and fairly compensate petitioners, all right with legal interests thereon from the date of judicial demand until paid, for costs of expert witnesses retained, for attorney fees, and for all costs of these proceedings for the following reasons, set forth in Section V.

## IV.   JURISDICTION AND VENUE

12.

The jurisdiction of this Court with respect to the copyright infringement claims is based upon 28 U.S.C. §§ 1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.), which is within the exclusive

jurisdiction of federal courts pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction for plaintiffs' state law unfair trade practices and unjust enrichment claims pursuant to 28 U.S.C. Section 1367.

13.

This Court has personal jurisdiction over Defendants because the Defendants' infringement and misappropriation, individually and in concert with one another, has occurred, and is continuing, in this judicial district and the Defendants conduct systematic and continuous business in this judicial district, as discussed fully herein. Defendants, Beyoncé Carter and Parkwood Entertainment and/or their agents also own immovable property in this judicial district.

14.

This Court has specific personal jurisdiction over Defendants given the systematic and continuous business contacts of Defendants in Louisiana as evidenced by the connections discussed below, which, collectively, prove purposeful availment of Louisiana.

15.

Plaintiffs' claims implicate widespread, pervasive infringement of a copyright owned by the Da Showstoppaz, domiciled in greater New Orleans, Louisiana.

16.

Defendants have knowingly and willfully exploited the Infringing Works in Louisiana, beginning with offering and advertising the Infringing Works, "Break My Soul" and "Renaissance" and "Renaissance: A Film by Beyoncé" for sale in Louisiana, and/or authorized the same.

17.

Defendants benefited substantially from the sale and transmission of a substantial number of copies of the Infringing Works in Louisiana.

18.

Defendants licensed and/or authorized the licensing of the Infringing Works with Louisiana companies and for exploitation in Louisiana, including but not limited to the performance of the Infringing Works during television broadcasts distributed in Louisiana and performance of the Infringing Works in Louisiana, including but not limited to the "Break My Soul" Tour performance on September 27, 2023, at the Superdome in New Orleans.

19.

A substantial number of purchasers of the Infringing Works are Louisiana residents. A substantial portion of the filming for the "Explode" video occurred in New Orleans. Further, upon information and belief, "Renaissance: A Film by Beyoncé" included portions of New Orleans.

20.

Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with Louisiana residents.

21.

A coordinated plan existed among numerous Defendants to distribute the Infringing Works throughout the U.S., including Louisiana.

22.

Defendants actively participated in and/or authorized the unauthorized and unlawful manufacture, replication, distribution, performance and other use and exploitation of the Infringing Works and actively participated in the unauthorized and unlawful manufacture, replication,

distribution, performance and other use and exploitation of the Infringing Works to Louisiana residents.

23.

Defendants actively participated in the unauthorized and unlawful distribution and transmission of the Infringing Works via the Internet, including but not limited to the initial, exclusive release of "Break My Soul" and "Renaissance" on the "Tidal" music streaming service, and the later releases of the Infringing Works via YouTube, iTunes, Amazon and other internet services, which resulted in substantial commercial transactions with Louisiana residents.

24.

Defendants actively participated in transmission and streaming of the Infringing Works via the Internet, which was available to and viewed by Louisiana residents.

25.

Beyoncé Knowles Carter has made, and she and other Defendants have authorized, organized, and promoted, performances of the Infringing Works in Louisiana, including but not limited to the Break My Soul Tour performance in New Orleans on September 27, 2023. Big Freedia has hosted many concerts in New Orleans, the latest being on October 6, 2023, at Tipitina's in New Orleans, Louisiana.

26.

Defendants have generated touring revenues from the unauthorized and unlawful exploitation of the Infringing Works, including receiving substantial revenue from such exploitation in Louisiana.

27.

Louisiana has a considerable interest in adjudicating disputes wherein the copyrights owned by Louisiana residents are misappropriated and infringed.

28.

The Defendants herein, which are domiciled in other states, facilitated the infringing acts occurring in the U.S., and actively participated in a scheme aiding, inducing, and contributing to copyright infringement, unfair trade practices, and unjust enrichment in the U.S, including but not limited to Louisiana.

29.

Defendants have also entered into agreements with persons or companies that have a significant presence in Louisiana, with the intention that such contracts will be performed in Louisiana, including but not limited to contracts for the filming of the "Explode" video, "Renaissance: A Film by Beyoncé" motion picture, distribution of the "Break My Soul" and "Renaissance" video and audio recordings, and ticket sales, merchandise sales and other arrangements for the Break My Soul Tour performance at the Superdome on September 27, 2023.

30.

For those Defendants, which are domiciled in other states, each could certainly reasonably anticipate being hailed into a court in the U.S., and Louisiana specifically given their willful and knowing exploitations of the Infringing Works in Louisiana. Thus, jurisdiction could also be exercised constitutionally in this Court pursuant to Rule 4(k) (2).

31.

Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over all other claims set forth in the Complaint because these claims are so related to the claims arising under the Federal FCA and as such form part of the same case or controversy.

32.

While the Court's § 1338(a) exercise of jurisdiction over the copyright claims is exclusive and its § 1338(b) exercise over the related unfair competition claims is broadly construed by courts, the remaining claims presented for the Court's resolution are basic state law disputes between an parties that reside in this State *inter se*.

33.

Because at least part of the proof for the claims described in herein in Section V, will be common to the proof for the § 1338(a) copyright claims and the § 1338(b) unfair competition claims, they are considered part of the same constitutional case for this Court's exercise of § 1367 supplemental jurisdiction.

34.

As a prudential and efficiency matter, the Court shouldn't require the LLC to litigate its copyright claims *only* in this Court, while forcing it (and its members) to related state law tort and business claims closely related to Cerberus' enforcement of its rights under the Copyright Act.

35.

Accordingly, this district is the appropriate forum under:

A. 28 U.S.C. § 1391(b)(1), because this is a district in which at least one Defendant resides, and all Defendants are residents of Louisiana, the State in which this district is located; and/or

B. 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the Plaintiffs' claim(s) occurred in this district, and because a substantial part of property that is the subject of this action is situated in this judicial district; and/or

C. 28 U.S.C. 1391(b)(3), because every Defendant is subject to the court's personal jurisdiction regarding the business it conducts in Louisiana or with Louisiana companies or individuals, which gives rise to specific *in personam* jurisdiction; and/or

D.  28 U.S.C. § 1400(a), because this is a civil action relating to copyrights and the Defendants or their agents reside or may be found in this district.

36.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

37.

The causes of action alleged in this complaint are timely brought within the applicable statutes of limitations: (i) pursuant to 17 U.S.C. § 507(b) it is within the three (3) years from when the Plaintiffs became aware that their copyright has been infringed upon the release of "Renaissance";[4] (ii) as it is within one-year prescriptive period for delictual actions brought forth Plaintiffs' claims under the LUTPA.

## V.     FACTUAL BACKGROUND AND ALLEGATIONS

### History of Bounce Music

38.

Bounce music, a variety of hip-hop, started in the 1980's in the housing projects of New Orleans. Key characteristics of this genre of music involve call-and-response chants that were

---

[4] "The Copyright Act entitles a copyright owner to obtain monetary relief for any timely infringement claim, no matter when the infringement occurred. The Act's statute of limitations establishes a three-year period for filing suit, which begins to run when a claim accrues (here, the Court assumes without deciding, upon its discovery). That provision establishes no separate three-year limit on recovering damages. If any time limit on damages exists, it must come from the Act's remedial sections. But those provisions merely state that an infringer is liable either for statutory damages or for the owner's actual damages and the infringer's profits. See § 504(a)–(c). There is no time limit on monetary recovery. So a copyright owner possessing a timely claim is entitled to damages for infringement, no matter when the infringement occurred."
*Warner Chappell Music, Inc. v. Nealy,* 22-1078, 2024 WL 2061137, at *1 (U.S. May 9, 2024).

influenced by the city's Mardi Gras Indians.[5] Oftentimes, "dances, such as twerking, generally accompany the songs."[6]

39.

Pivotal moment in its history, in 1991, MC T. Tucker & DJ Irv's released "Where Dey At," which is said to be the first bounce song of its kind. "The song heavily sampled the 1986 song "Drag Rap" by New York group the Showboys. The song's beat—called the Triggerman Beat—has been an integral part of bounce music ever since."[7]

40.

The release of "Where Dey At" opened the door to other bounce artists to follow in the footsteps for the style of dance bounce accompanying the song, including artists like DJ Jubilee, Cheeky Blakk, Katey Red, Magnolia Shorty, Big Freedia, Gotta Boi Chris, and others like the Plaintiffs.

41.

The subsequent development of New Orleans' own distinct sound, importantly asserting that the development of a local and particular rap sensibility began largely with nightclub and block party DJs, "who gauged audience response in order to identify particularly resonant or energizing songs or parts of songs."[8]

42.

---

[5] Travis M. Andrews, "A lawsuit by rapper Big Freedia raises the question again: Can dance be copyrighted?" WASH. POST (November 27, 2018 at 3:34 p.m. EST) https://www.washingtonpost.com/arts-entertainment/2018/11/27/lawsuit-by-rapper-big-freedia-raises-question-again-can-dance-be-copyrighted/
[6] Id.
[7] "Bounce Music Guide: 3 Characteristics of Bounce Music" (Last updated: June 7, 2021) https://www.masterclass.com/articles/bounce-music-guide.
[8] Holly Hobbs, "A Review of Matt Miller's Bounce: Rap Music and Local Identity in New Orleans," SOUTHERN SPACES (November 20, 2012) https://southernspaces.org/2012/review-matt-millers-bounce-rap-music-and-local-identity-new-orleans/. Khalil Gillon, "Bounce music has been part of New Orleans culture for more than 30 years," VERITE NEWS (June 28, 2023) https://veritenews.org/2023/06/28/bounce-music/.

Historically, the overly sexualized and often obscene lyrics accompanied by sexually suggestive dance moves have prevented the commercial viability of bounce music from spreading too far beyond its New Orleans borders.[9]

43.

It is important to note that bounce music has always had a strong connection to the LGBTQ community, "which has a long tradition of gay and cross-dressing performers not just as a fringe element but as part of the musical mainstream."[10]

44.

In fact, many LGBTQ bounce artists "have no desire to be typed within, or set apart from, bounce culture; and indeed, within New Orleans itself, they mostly are not — even as their bookings elsewhere in the country are founded increasingly on the novelty of their sexual identities."[11]

45.

In the aftermath of Hurricane Katrina, August 28, 2005, many bounce artists were displaced and exiled from their New Orleans homes for many months, to Baton Rouge, Atlanta, Houston, Dallas, and elsewhere. In their displacement and homesickness, many bounce artists attempted to recreate bounce shows similar to the block party DJs and nightclubs in their new neighborhoods.[12]

46.

---

[9]   Jonathan   Dee,   "New   Orleans's   Gender-Bending   Rap,"   N. Times   (July   22,   2010), https://www.nytimes.com/2010/07/25/magazine/25bounce-t.html?pagewanted=all.
[10] *Id.*
[11] *Id.*
[12] *Id.*

With the rise of two local record labels: Cash Money Records (featuring high profile artists Lil' Wayne, Juvenile, and Manny Fresh) and No Limit Records (featuring Master P and Mystical) along with the unintended effect of displacement of such artists from Katrina, bounce music became a mainstream segment of hip-hop.

**History of Da Showstoppaz: Tessa Avie, Keva Bourgeois, Henri Braggs, and Brian Clark**

47.

On or about 2001, Ms. Bourgeois and Ms. Avie started working together worked at Taco Bell in the food court of Esplanade Mall located 1401 W Esplanade Ave, Kenner, Louisiana. Over the course of working together, Ms. Bourgeois and Ms. Avie both met Mr. Clark who worked at Wendy's, which was located next door to Taco Bell.

48.

A friendship quickly developed between the three. Sometime later that year, through mutual friends, Ms. Bourgeois met Ms. Braggs. While in conversation with Ms. Avie and Mr. Clark, Ms. Bourgeois mentioned meeting Ms. Braggs, who was also an acquaintance of Ms. Avie. Plaintiffs, thereafter, quickly became friends through their shared interest in bounce music. In fact, many weekends, Plaintiffs would frequent well-known bounce clubs, such as Fusions and KeyWest.

49.

On or about July 14, 2002, Ms. Bourgeois visited her aunt in Boutte, Louisiana. At her aunt's house, Ms. Bourgeois met Mr. Norris Revader a/k/a Big Steppa (hereinafter referred to as "Mr. Revader"), a family friend who informed her that he was working on a mixtape and desired to have more local artists' music on it.

50.

Mr. Revader, who was good friends with Ms. Bourgeois' cousin Carlos McCoy, requested an introduction to Ms. Bourgeois due to her musical abilities. Mr. Revader recruited and offered a placement and chance to do a song on an anticipated mixtape.

51.

Mr. Revader, a businessman, was attempting to launch a music label called Black House Entertainment. The entity, BLACK HOUSE ENTERTAINMENT, LLC (hereinafter referred to as "Black House Entertainment"), was not formed until September 19, 2003.

52.

Excited to turn her musical hobby into a career, Ms. Bourgeois and her frequent collaborators, Ms. Braggs, Ms. Avie and Mr. Clark, each coming from a common musical background, regarded this opportunity with Black House Entertainment as potentially great exposure to highlight their musical talents. As such, Da Showstoppaz was borne into fruition.

**Da Showstoppaz & Creation of "Release A Wiggle" & Its Dissemination**

53.

On or about July 14, 2002, Ms. Bourgeois contacted Mr. Revader to see if the newly formed group, Da ShowStoppaz, would be able to be placed on the mixtape in lieu of herself. Mr. Revader did not object and considered this a great opportunity to include more local artists. Ms. Bourgeois agreed that to meet Mr. Revader the following weekend to record the song for the mixtape.

54.

Inspired, Ms. Bourgeois thought of a name of a song and saying for the hook—"Release A Wiggle" during her job at Taco Bell. Plaintiffs met over a two-day process—on or about July 15, 2002, through July 16, 2002—at Ms. Bourgeois' residence where they collaborated and composed "Release A Wiggle."

55.

During the two-day process, each Plaintiff sat around the kitchen table filling notebooks with lyrics and put together the lyrics and composition of "Release A Wiggle." The song was then recorded using a karaoke machine and finally a cassette player used from Ms. Bourgeois' early childhood years.

56.

Da Showstoppaz' "Release A Wiggle" is approximately four minutes and seven seconds long and consists of the hook "release a wiggle." Specifically, the lyrics are as follows:

Chorus:

The beat that starts confusion (thank ya)
We gon release a wiggle(ohh)
a wiggle wop de wop
let loose a wiggle(oh)
and make it drop de drop
**release a wiggle (oh)**
a wiggle wop de wop
let loose a wiggle(oh)
and make it drop de drop
Showstoppaz booty boppaz
**Release yo wiggle** break em off some'm proper (thank ya)
Showstoppaz booty boppaz
**Release yo wiggle** break em off some'm proper (ohh)
Won't you wobble with it hustle with it tear it down(yeah)
Don't pull a muscle with it make dat ass touch the ground (what)
Won't you wobble with it hustle with it tear it down(yeah)
Don't pull a muscle with it make dat ass touch the ground(what)
Bounce bounce (get it get it)
Don't stop(do it do it)
Work work(wit it wit it)
**Wiggle wiggle(move it move it)**
Bounce bounce (git it git it)
Don't stop(do it do it)
Work work(wit it wit it)
Wiggle wiggle(move it move it)
Da da dada dada da da dada dada da da dada dada da
Release release
Da da dada dada da da dada dada da da dada dada da

Release release

57.

Prior to the writing and recording of Da Showstoppaz' "Release A Wiggle" the phrases, "release a wiggle," and "release ya wiggle" had never been recorded or published in any other song.

58.

The phrases, "release a wiggle" and "release yo wiggle" are interchangeable. The interchangeability is significant because of the New Orleans accent in the African-American community. Depending on a particular neighborhood of New Orleans, the pronunciation of "a" is often "—ah." Each neighborhood has its own input to the living language, but mostly, the local dialect is one of inflection. Whether the phrase is a "you" or a "ya" or a "y", or for example, whether one uses a "th" sound or only a "d" sound to pronounce the word "the," all depends on the placement of the word in the phrase, and where the accents fall.

59.

Repetition of phrases and hooks is a hallmark of New Orleaans bounce music. In the case of Da Showstoppaz' song, the Plaintiffs repeat the phrase "release a wiggle" six times, as both a chant and a hook that solidifies the song title. They use a variation, "release yo wiggle" six times throughout the song to create a recognizable song structure. Less frequently, but consistent with the theme of the song, they repeat the phrases "let loose a wiggle," "wiggle wiggle," and "give a little wiggle" twice each throughout various moments of the 4-minute bounce song.

60.

On or about July 19, 2002, Plaintiffs met Mr. Revader at Richard Boulden's, a/k/a Shine The Engineer (hereinafter referred to as "Shine"), apartment studio located in New Orleans East.

Present at the recording were Shine, Carlos McCoy, Mr. Revader, Ms. Bourgeois, Ms. Braggs, Ms. Avie, Mr. Clark, and others.

61.

Plaintiffs presented Shine the instrumental beat for "Release A Wiggle" and both Ms. Bourgeois and Ms. Braggs directed the portions of each members' part of the song to be recorded separately. Further, Ms. Bourgeois and Ms. Braggs took turns producing and laying the lead verses. Then, all the members performed and overdubbed the background vocals on top of their already recorded individual performances.

62.

At the end of their recording session, Mr. Revader requested that Da Showstoppaz give a "shout-out" to Black House Entertainment. As such, Plaintiffs went back to the booth to freestyle the words "Black House" into the end of the song, adding a few additional lyrics until the instrumental beat faded out.

63.

Mr. Revader informed Plaintiffs that "Release A Wiggle" would be prominently featured in a mixtape that would be sold at New Orleans bounce parties. Mr. Revader said that the mixtape would be named "Fire on Da Bayou Vol. 1" and sold by Black House Entertainment.

64.

Grateful for an opportunity to showcase their song, and in their excitement, Plaintiffs did not request any documentation or paperwork. In fact, no paperwork or contracts were ever signed or exchanged. As Shine finished the mixing and mastering of "Release A Wiggle", Mr. Revader informed the Da Showstoppaz that he would be in touch with them to provide some copies of the

Fire on Da Bayou Vol. 1 mixtape once it was finished in approximately a month. Da Showstoppaz left and continued with their daily lives, eagerly anticipating the release of their work.

65.

In or around September 2002, Ms. Bourgeois received copies of the Fire on Da Bayou Vol. 1 mixtape from Mr. Revader for each member of Da Showstoppaz.

66.

Da Showstoppaz used those copies of the Fire on Da Bayou Vol. 1 mixtape and their personal connections to obtain gigs to perform their new song. "Release A Wiggle" became a local hit that was played often at well-known bounce clubs such as Fusions, KeyWest, and Caesars. Despite the fact that Da Showstoppaz were unknowns, out of all the songs placed on Fire on Da Bayou Vol. 1[13], the sales of that mixtape was largely credited to the Da Showstoppaz' song, "Release A Wiggle."

67.

Upon information and belief, Fire on Da Bayou Vol. 1 was disseminated from the trunks of cars by block party DJs and at nightclubs, or handed out to well-known disc-jockeys who played the music at bounce music venues during that time period.

68.

In or around the fall of 2002, Mr. Clark met a well-known producer and beatmaker, Mark Mulliens a/k/a Peacachoo (hereinafter referred to as "Peacachoo").

69.

---

[13] Robert Fontenot, "Urban Legends: Positive Papa Doc" OFF BEAT MAGAZINE (November 1, 2003) https://www.offbeat.com/articles/positive-papa-doc/. "Within no time the label had sold 500 "mixtape" CDs tellingly entitled Fire on Da Bayou to parish residents, all emblazoned with the Blackhouse logo. That original design was the source of some controversy, featuring as it did a sniper atop the White House (and this during the D.C. sniper attacks)."

In or around early-2003, Da Showstoppaz began to perform "Release A Wiggle" at various bounce music parties. At the Da Showstoppaz' performance in Boutte, Louisiana, Mr. Revader met Peacachoo and made plans to execute their music ventures.

70.

As stated, Mr. Revader formed BLACK HOUSE ENTERTAINMENT, LLC by filing the articles of formation with the Louisiana Secretary of State on September 19, 2003. Mr. Revader also formed BLACKHOUSE MUSIC GROUP, L.L.C. on April 10, 2006. Collectively, BLACK HOUSE ENTERTAINMENT, LLC and BLACKHOUSE MUSIC GROUP, L.L.C. are referred to hereinafter as "BlackHouse."

71.

Meanwhile, Da Showstoppaz's continued to perform their local hit in various venues throughout 2003 and until the beginning of 2004. Da Showstoppaz also wrote and produced a full-length album during that time period.

72.

In early 2004, Mr. Revader informed Da Showstoppaz that Black House Entertainment would cease to have any affiliation with the group. Mr. Revader stated that Black House Entertainment had begun doing business with other well-known local artists such as Gotti Boi Chris, Ha Sizzle, Block Burnaz, and Déjà Vu.

73.

In wake of Hurricane Katrina in 2005, Da Showstoppaz lost much of the materials related to "Release A Wiggle," including the original master recording and copies of the Fire on Da Bayou Vol. 1 mixtape.

74.

However, Ms. Bourgeois had copies made of Da Showstoppaz full-length album that they created in 2003, and the album contained their single "Release A Wiggle."

75.

Ms. Bourgeois created her YouTube channel "jus1key" on or around July 20, 2010, primarily to showcase wig and make-up tutorials.

76.

Critically important to this timeline, Ms. Bourgeois uploaded the original version of "Release A Wiggle" on YouTube on March 2, 2014.[14]

77.

In the context of bounce music, the phrases "release a wiggle," "release ya wiggle," "let loose a wiggle," "give a little wiggle," and "wiggle wiggle" are and were wholly unique, created, composed, and recorded by Da Showstoppaz in New Orleans on July 19, 2002, and published via YouTube on March 2, 2014. These unique phrases were copyrightable works that were misappropriated and on which Defendants infringed.

78.

Ms. Braggs, on behalf of Da Showstoppaz, applied for and received copyright registrations for "Release A Wiggle" (Copyright Office Registration Number PA0002396076) for the lyrics, melody, and music arrangements effective February 9, 2023. Da Showstoppaz applied for Sound Recording (Copyright Number Sru001515047) effective September 15, 2022. Both copyright registrations are attached hereto as Exhibit A and B, respectively, and incorporated herein.

79.

---

[14] *See* https://www.youtube.com/watch?v=OqZj0TlrSCk

Defendants' willful infringement of "Release A Wiggle" has harmed the Da Showstoppaz because Plaintiffs were not properly credited for their contributions to Big Freedia's "Explode." The proper licensing of "Explode" and then subsequently, the sampling of "Explode" in Beyoncé's worldwide hit song, "Break My Soul," in addition to her album, "Renaissance," its tour, "Renaissance World Tour," and the accompanying film, "Renaissance: A Film by Beyoncé," would not only have generated substantial revenues, but they would have generated international recognition for Da Showstoppaz's original works, and as a contributor to "Explode" and "Break My Soul." Note, Da Showstoppaz had no knowledge that Big Freedia infringed their song on "Explode" until they heard the song on Beyoncé's "Break My Soul," which became one of Beyoncé's biggest hits. Plaintiffs sat on the sidelines as Defendants received acclaim and compensation without giving any of the proper recognition to Da Showstoppaz.

80.

Plaintiffs had no knowledge of "Explode" by Big Freedia that infringed on their work for several reasons. First, Hurricane Katrina required all four members to be displaced in other locations. Second, Da Showstoppaz had most of their works, along with their belongings, destroyed by one of the deadliest hurricanes to impact the greater New Orleans area. Third, after Black House rejected Da Showstoppaz, the members felt discarded by the music industry and stopped participating in the bounce music scene.

**"Explode" by Big Freedia and BlaqNmilD**

81.

On June 17, 2014, Big Freedia released its major-label debut studio album "Just Be Free," which included the first single ,"Explode," which was written and composed by Big Freedia and BlaqNmilD. The recording was produced by BlaqNmilD and Thomas McElroy. Executive

Producer Tara Ravazi, along with Producer Cherie Merricks through the Production Company Happy Place Inc., co-directed the "Explode" music video. Big Freedia was also credited for vocal production.

82.

"Explode" was published by Girl Down, and then released, manufactured, distributed, and marketed through Kobalt Music Publishing LLC.

83.

Upon information and belief, Big Freedia was once affiliated with both Mr. Revader and Peacachoo through the BlackHouse ventures and music label, as they produced several songs, as shown below:[15]

 

84.

Big Freedia is deeply tied to New Orleans bounce music. Indeed, the simplest of online searches shows that Big Freedia, born and raised in New Orleans and in the same communities from which bounce music emerged, is credit with popularizing bounce music.

---

[15] https://www.discogs.com/label/876557-Blackhouse-Entertainment.

85.

Given Big Freedia's roots in New Orleans and ties to its bounce scene, and Big Freedia's association with BlackHouse, any reasonable person could infer that Big Freedia had access to Da Showstoppaz' "Release A Wiggle."

86.

"Explode" is every bit the rowdy blast its title implies. Amid insistent, rattling beats, Freedia repeatedly chants, "Release yo wiggle".[16] More specifically, the relevant lyrics of "Explode" are published by Girl Down, You A Genius Publishing as follows:

> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka (release yo' wiggle)
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka (release yo' wiggle)
> Release yo', release yo', release yo' wiggle
> Release yo', release yo', release yo' wiggle
> Release yo', release yo', release yo' wiggle
> Release yo', release yo', release yo' wiggle
> …
> We'll wiggle on 'em (we'll wiggle on 'em)
> …
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka (release yo' wiggle)
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka
> Yaka, yaka, yaka, yaka, yaka, yaka, yaka, yaka (release yo' wiggle)
> …
> We'll wiggle on 'em (we'll wiggle on 'em)

87.

"Explode" runs two minutes and forty-seven seconds long. At forty seconds into the song, Big Freedia first raps, "release yo' wiggle;" then again at forty-five seconds, "release yo; wiggle;" then immediately after, Big Freedia raps with gusto the four repetitive lines, "release yo' release yo', release yo' wiggle." At one-minute and thirty-two seconds into the song, Big Freedia again

---

[16] Mark Hogan, "Big Freedia Twerks Toward New LP 'Just Be Free' With Frenzied 'Explode,'" SPIN (April 24, 2014) https://www.spin.com/2014/04/big-freedia-just-be-free-album-explode-single-stream/.

uses the word "wiggle" by rapping twice, "We'll wiggle on 'em." At the two-minute mark, again the phrase "release yo' wiggle" appears as part of the yaka yaka hook. The hooks occurs twice in this section of "Explode." At two minutes and twenty-eight seconds, Big Freedia repeats "We'll wiggle on 'em" twice.

88.

"Explode" infringes on Da Showstoppaz' "Release A Wiggle" twelve times, as the infringing phrase "release yo' wiggle" and several other substantially similar phrases are featured prominently in the song and evenly spread out across Explode's two-minute and forty-seven second runtime. Any reasonable person listening to "Release A Wiggle" and "Explode" would conclude that the songs are substantially similar.

89.

The "Just Be Free" album included the single "Explode," which peaked at Number 48 on the Billboard's Trending Top R&B/Hip-Hop Albums music chart and has sold thousands of copies in the United States. Upon information and belief, some or all of those sales included and infringed on the Plaintiffs' intellectual property.

90.

To date, over 3.1 million views of the "Explode," music video on YouTube and thousands of digital downloads of U.S. sales have been completed. To date, Spotify shows that "Explode" has been streamed 1,472,615 times and remains the biggest hit from Big Freedia's debut big label album. Upon information and belief, some or all of the streaming and digital download revenue included and infringed on the Plaintiffs' intellectual property.

91.

The coined term and phrase "release a/yo wiggle" has now become closely synonymous with Big Freedia, thereby contributing to Big Freedia's fame. However, Big Fredia did not compose or write the phrase, and Big Freedia never credited Da Showstoppaz as the source.

92.

Da Showstoppaz have a copyright to their unique and distinctive lyrics and musical composition, "Release A Wiggle." Big Freedia had access to "Release A Wiggle." Therefore, by copying "Release A Wiggle" in "Explode," Big Freedia infringed on Da Showstoppaz' copyrights.

**"Break My Soul," "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé"**

93.

Beyoncé's "Renaissance" album includes a hit song called "Break My Soul" that prominently contains a sampling of Big Freedia's "Explode." More specifically, the sampled parts contain the most iconic lyrics and musical arrangement of "Explode" namely, "release yo' wiggle." In fact, Big Freedia publicly stated "[i]t feels surreal to be on the track with the Queen Beyoncé…[o]nce again I'm so honored to be apart of this special moment I'm forever grateful lord. Someone please catch me."[17]

94.

Break My Soul's audio recording and video were produced by Defendants prior to June 20, 2022. Upon information and belief, Jay-Z, Tricky Stewart, The Dream, and Mrs. Carter wrote and composed "Break My Soul." The audio recording was produced by Mrs. Carter, who is credited as Executive Producer, along with Tricky Stewart, The Dream. Beyoncé was also credited

---

[17] Alexander Kacala "Beyoncé just released a new song, and it will make you want to dance," TODAY (June 20, 2022, 9:58 PM CDT) https://www.today.com/popculture/music/break-my-soul-beyonce-new-song-rcna34465.

for vocal production, and Big Freedia was credited with background vocal production for the use of Big Freedia's sample of "Explode."

95.

"Break My Soul" was published by WC Music Corporation, Sony Music Entertainment, Oakland 13 Music, Spirit Music Publishing and Warner-Tamerlane Publishing Corporation.

96.

"Break My Soul" was by Parkwood Entertainment, LLC, under exclusive license to Columbia Records, a division of Sony Music Entertainment and WC Music Corporation.

97.

"Renaissance" was released in the United States on July 29, 2022. Parkwood Entertainment, LLC, Columbia Records, a division of Sony Music Entertainment released, manufactured, distributed, and marketed the single "Break My Soul" and the album.

98.

The single, "Break My Soul," was Number 1 on the Billboard's Trending 140 music chart, was in the top ten on many international music lists and has sold more than 543,000 copies in the United States. The song had 18.9 million streams, 13,000 downloads, and 61.7 million viewer impressions in the week ending August 4, 2022.The Recording Industry Association of America ("RIAA") certified "Break My Soul" as "Platinum" on December 6, 2022, as it sold one million equivalent units since its summer release. To date, Break My Soul has been streamed 439,528,512 times on Spotify. Upon information and belief, some or all of those sales and streams included the Plaintiffs' intellectual property.

99.

Beyoncé released a "Break My Soul" Hive-Certified music video on December 5, 2022, which garnered over 1,750,151 million views on YouTube.[18] Further, she released a lyrics video of "Break My Soul" on June 20, 2022, which has garnered more than 45,000,000 views on YouTube.[19] Upon information and belief, some or all of those profits derived included the Plaintiffs' intellectual property.

100.

Further, "Break My Soul" won Song of the Year at the 2022 Soul Train Awards. It was nominated for Favorite R&B Song at the 2022 American Music Awards, and Song of the Summer at this year's MTV Video Music Awards. Upon information and belief, some or all of those profits derived included the Plaintiffs' intellectual property.

101.

Beyoncé's "Renaissance World Tour," during which Defendants performed "Break My Soul" featuring the infringing "Explode", including a live performance in New Orleans on September 27, 2023, resulted in sales of more than "$579 million dollars worldwide, with 2.7 million fans attending across 56 dates in 39 cities."[20]

102.

At her last stop of "Renaissance World Tour," Beyoncé revealed that she would be bringing the tour to movie theaters in December 2022, releasing the trailer for "Renaissance: A Film by Be Beyoncé." Ticket pre-sales were swiftly made available at theater chains including AMC, Regal

---

[18] Beyoncé - BREAK MY SOUL (Official Lyric Video), (June 20, 2022) https://youtu.be/yjki-9Pthh0?si=JxJpRR6NYTWtS2Rl.
[19] Beyoncé - BREAK MY SOUL (Hive Certified) (December 5, 2022) https://youtu.be/-6mYfN97ZS4?si=Dw_FSrzFY1jIirDY, with the song description stating, "Thank you so much for all the love and for releasing the wiggle."
[20] Steven J. Horowitz, "Beyoncé's Renaissance World Tour Earns $579 Million," VARIETY (October 3, 2023) https://variety.com/2023/music/news/beyonces-renaissance-world-tour-revenue-1235743490/.

and Cinemark, with the film set for release on December 1, 2023. Upon information and belief, some or all of those profits that will be derived will include the Plaintiffs' intellectual property.

103.

"Renaissance: A Film by Be Beyoncé" was released by Parkwood Entertainment, LLC, and Amplify, Inc.

104.

Pitchfork writer Matthew Strauss described the song as "a dance song meant to usher in a new era with a new anthem."[21] Mikael Wood of the Los Angeles Times called the song "a thumping 1990s-esque house jam" and noted that the lyrics tied the song "clearly to its roots in the black and queer community."[22] Music reviewer, Tara Joshi from the Guardian described the record as "a raucous, euphoric take on '90s diva house."[23] There is no dispute that "Break My Soul" prominently samples Big Freedia's 2014 bounce song "Explode" and Robin S's 1993 house-pop single "Show Me."

105.

The Defendants' have willful infringed on Da Showstoppaz' "Release A Wiggle," and inflicted harm on the Da Showstoppaz by failing to properly credit Plaintiffs for their contributions to "Explode," "Just Be Free," "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé." The proper licensing of "Release A Wiggle" for its use in "Explode," "Just Be Free," "Break My Soul," "Renaissance," "Renaissance World Tour," and

---

[21] Matthew Strauss, "Beyoncé Releasing New Song "Break My Soul" Tonight," PITCHFORK (June 20, 2022) https://pitchfork.com/news/beyonce-releasing-new-song-break-my-soul-tonight/.

[22] Mikael Wood, "Beyoncé returns with liberating house jam 'Break My Soul,'" LOS ANGELES TIMES (June 20, 2022 8:32 PM PT) https://www.latimes.com/entertainment-arts/music/story/2022-06-20/beyonce-break-my-soul-renaissance.

[23] Tara Joshi, "Beyoncé: Renaissance review – joyous soundtrack to a hot girl summer," GUARDIAN (July 29, 2022 00.01 BST8:32 PM PT) https://www.theguardian.com/music/2022/jul/29/beyonce-renaissance-review-joyous-soundtrack-to-a-hot-girl-summer.

"Renaissance: A Film by Beyoncé" would not have only generated substantial revenues for Da Showstoppaz, but it would have generated international recognition for Da Showstoppaz's performance works and contributions to a worldwide hit song. For their part in creating the now-iconic catch phrase "release a/yo wiggle," Plaintiffs were denied the worldwide acclaim, popularity, recognition, and revenue earned by Defendants.

### Infringement by the Defendants

106.

To write and produce the song and the video for "Explode," and "Break My Soul" defendants intentionally and unlawfully copied the unique and original words of Da Showstoppaz from the "Release A Wiggle" works and sound recordings, by unlawfully using their unique and distinctive lyrics and musical composition, "Release A Wiggle."

107.

As of this date, Big Freedia is considered synonymously with New Orleans' experience with bounce music.

108.

In fact, her own website posted that Big Freedia was "[k]nown as the larger-than-life ambassador of New Orleans Bounce music, Big Freedia is a nationally recognized hip-hop artist, TV personality and cultural influencer. Most recently she made headline news for her feature on Beyoncé's Grammy-Award winning single, "Break My Soul," released in 2022."[24]

109.

---

[24] https://www.bigfreedia.com/bio/ (May 16, 2024).

Given Big Freedia's roots in New Orleans and ties to its bounce scene, and Big Freedia's association with BlackHouse, any reasonable person could infer that Big Freedia had access to Da Showstoppaz' "Release A Wiggle."

110.

"Explode" runs two minutes and forty-seven seconds long. At forty seconds into the song, Big Freedia first raps, "release yo' wiggle;" then again at forty-five seconds, "release yo; wiggle;" then immediately after, Big Freedia raps with gusto the four repetitive lines, "release yo' release yo', release yo' wiggle." At one-minute and thirty-two seconds into the song, Big Freedia again uses the word "wiggle" by rapping twice, "We'll wiggle on 'em." At the two-minute mark, again the phrase "release yo' wiggle" appears as part of the yaka yaka hook. The hooks occurs twice in this section of "Explode." At two minutes and twenty-eight seconds, Big Freedia repeats "We'll wiggle on 'em" twice.

111.

"Explode" infringes on Da Showstoppaz's "Release A Wiggle" twelve times, as the infringing phrase "release yo' wiggle" and several other substantially similar phrases are featured prominently in the song and evenly spread out across Explode's furious two-minute and forty-seven second runtime. Any reasonable person listening to "Release A Wiggle" and "Explode" would conclude that the songs are substantially similar.

112.

The similarities go beyond substantial, which is itself sufficient to establish copyright infringement, and are in fact striking. The use of the phrase "release yo' wiggle" and similarity of words are clear indicators, among other things, that "Explode" copies DaShowstoppaz's work.

113.

The identical and striking similarity between "Explode" and subsequently, "Break My Soul" and the protectable elements of "Release A Wiggle" are obvious, such that an ordinary lay listener would instantly recognize the sample and similarity between the works. That similarity surpasses the realm of generic coincidence and independent creation.

114.

The coined term and phrase "release a/yo wiggle" has now become closely synonymous with Big Freedia, thereby contributing to Big Freedia's fame. However, Big Fredia did not compose or write the phrase, and Big Freedia never credited Da Showstoppaz as the source.

115.

Da Showstoppaz have a copyright to their unique and distinctive lyrics and musical composition, "Release A Wiggle." Big Freedia had access to "Release A Wiggle," which was subsequently sampled by "Break My Soul" by Mrs. Carter. Therefore, by copying "Release A Wiggle" in "Explode," Big Freedia infringed on Da Showstoppaz's copyrights.

116.

 Break My Soul's audio recording and video were produced by Defendants prior to June 20, 2022. Upon information and belief, Jay-Z, Tricky Stewart, The Dream, and Mrs. Carter wrote and composed "Break My Soul." The audio recording was produced by Mrs. Carter, who is credited as Executive Producer, along with Tricky Stewart, The Dream. Beyoncé was also credited for vocal production, and Big Freedia was credited with background vocal production for the use of Big Freedia's sample of "Explode."

117.

Defendants' sampling, copying, and repeated and continuing commercial use and exploitation of Da Showstoppaz's unique and distinctive lyrics and musical composition from the copyrighted works and sound recordings is not within the scope of the "fair use" exception to copyright.

118.

Given the undisputable sampling of Da Showstoppaz's unique and distinctive lyrics and musical composition, Defendants knew when writing, publishing, recording, releasing, advertising, transmitting, publicly performing and distributing, "Explode" and "Break My Soul" that they were infringing on pre-existing works. Defendants' knowledge that they were infringing copyrighted works is further evidenced by Big Freedia's association with BlackHouse.

119.

Defendants knew or should have known that "Explode" and "Break My Soul" unlawfully copied "Release A Wiggle" on or before June 20, 2022, due to the notice given by members of the Da Showstoppaz by social media on Instagram upon hearing "Break My Soul" for the first time and that "Release A Wiggle" has been on YouTube since March 2, 2014.

120.

Defendants failed to secure a license to copy and exploit Da Showstoppaz's "Release A Wiggle." In addition, subsequent to receiving notice, Defendants have failed to cease their exploitation of Da Showstoppaz's unique and distinctive lyrics and musical composition, and have continued their knowing, intentional and willful infringing activity.

121.

Defendants have, without authorization, created adaptations and derivative works of Da Showstoppaz's lyrics and musical composition.

122.

The conduct of the Defendants constitutes direct, contributory, vicarious and willful infringement of Plaintiffs' copyrights. All members of the distribution chain are liable for copyright infringement, including the co-writers, producers, and the entities that licensed, distributed, and sold the infringing work "Break My Soul," both as a single music video and as part of Mrs. Carter's album "Renaissance", and the unauthorized use and exploitation of Da Showstoppaz's works during the "Renaissance World Tour," performances and "Renaissance: A Film by Beyoncé".

123.

On or about June 21, 2022, a member from Da Showstoppaz's, upon hearing "Break My Soul" for the first time, which sampled "Explode" and in shock, posted on a popular social media account "theshaderoom" @bigfreedia and @beyonce notifying them of the unauthorized use of "Release A Wiggle" lyrics.

124.

Prior to the release of "Break My Soul" Plaintiffs were unaware of "Explode" due various—reasons, including, but not limited to, their lackadaisical experience in the music industry, moving away due to Hurricane Katrina, development into professional ventures—leading the members of Da Showstoppaz to disengage from the bounce music industry.

125.

April 24, 2024, counsels for Plaintiffs, notified counsel for Mrs. Carter and other Defendants that "Explode" and "Break My Soul" unlawfully copied "Release A Wiggle." To date, Defendants have not entered into a license agreement with Plaintiffs.

126.

All Defendants are responsible in some manner for the events described herein and are liable to Plaintiffs for damages available under the Copyright Act. Defendants named herein are the writers, performers, producers, record labels, distributors, publishers, and others, who were involved with the creation, release, reproduction, distribution, exploitation, licensing, and public performance of the Infringing Works, embodied in all forms of media, including videos, digital downloads, records, motion pictures and advertisements, all of which constitute, among other things, the improper preparation of a derivative work and direct, vicarious, and contributory infringement. As co-infringers, Defendants are jointly and severally liable for all amounts owed.

127.

Each Defendant is a practical partner in the infringing acts with all other Defendants, and are thus jointly and severally liable for each other's profits. As described throughout this Complaint, each of the Defendants had an important role in the infringing activity, worked together to accomplish it or were involved in directing various aspects of many of the coordinated infringing activities, and all had a significant financial interest in the infringing activity.

128.

Defendants' infringing acts were willful, knowing, and malicious and perpetrated without regard to Plaintiffs' rights.

129.

Despite the notice discussed above, Defendants continue to willfully infringe on Da Showstoppaz's lyrics and musical composition by reproducing, displaying, transmitting, distributing, exploiting, licensing, and publicly performing "Explode" and "Break My Soul." The Infringing Works continue to be reproduced, sold, distributed, publicly performed, licensed, and

otherwise exploited on DVD's and albums, and as digital downloads, and in music videos, and in other formats and media, all without payment to Plaintiffs.

## VI.     CAUSES OF ACTION

**Count One: Direct, Contributory, and Vicarious Copyright Infringement of "Release A Wiggle" By "Explode"**

130.

Da Showstoppaz's incorporates by reference the allegations already made in ¶¶ 1-129, above.

131.

Plaintiffs are, and at all material times hereto have been, the owners of copyrights in the sound recordings and musical compositions and they are entitled to and authorized to protect their sound recordings and compositions against copyright infringement, including through the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. § 106 *et seq.*, among others, "reproduce the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and "to sample their copyrighted works."

132.

Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia had access to "Release A Wiggle" via You Tube and other sources, as discussed above. Furthermore, Da Showstoppaz's unique and distinctive lyrics and musical composition in "Release A Wiggle" are substantially similar, meaning that access is presumed, and a claimed defense of "independent creation" is precluded as a matter of law.

133.

These Defendants' unauthorized reproduction, distribution, public performance, display, and creation of the derivative works, "Explode" and "Just Be Free" infringe Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

134.

Upon information and belief, since at least 2014, Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia have knowingly and systematically materially contributed to, intentionally induced, and/or caused third parties to infringe Plaintiffs' copyrights, including but not limited to, "Release A Wiggle" by administering and exploiting Plaintiffs' copyrighted lyrics and musical compositions and licensing to third parties the use of Plaintiffs' copyrighted lyrics and musical compositions in violation of Sections 106 *et seq.* and Section 501 of the Copyright Act.

135.

Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia did not seek or obtain any permission, consent, or license from Plaintiffs for the administration and exploitation of the sound recordings and musical compositions "Release A Wiggle", nor did these Defendants seek permission to license Plaintiffs' copyrighted musical compositions.

136.

Defendants' conduct has at all times been knowing, willful, and with complete disregard to Plaintiffs' rights.

137.

Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia material contributions, intentional

inducements and/or causing of copyright infringements by third parties were willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights.

138.

Each infringement by Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia, Plaintiffs' copyrighted lyrics and musical compositions of "Release A Wiggle" constitutes a separate and distinct act of infringement.

139.

As a proximate cause of these Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

140.

From the date of the creation of the infringing composition, sound recording and video recording "Explode," Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia have infringed Plaintiffs' copyright interests in "Release A Wiggle", including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing "Explode" at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the records and digital downloads through the execution of licenses, and/or actually selling, manufacturing, and/or distributing "Explode" and "Just Be Free" through various sources; (c) by substantially copying and the related advertising, marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and furthering the aforementioned infringing acts, or sharing in the proceeds therefrom, all through

substantial use of "Release A Wiggle" in and as part of "Explode," packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

141.

Plaintiffs have received no copyright ownership interests in, and for any of the exploitations of "Release A Wiggle" or any of the works associated with "Explode" and "Just Be Free."

142.

With knowledge of the infringement, Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

143.

Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia should be found to be vicariously liable.

144.

The infringement is continuing as the album "Just Be Free", on which "Explode" along with the subsequent infringement in "Break My Soul", continues to be sold, and the "Explode" music video continues to be sold, licensed for sale, downloads, and other exploitations by Defendants, or their agents.

145.

As a direct and proximate result of the infringements, Defendants Kobalt Music Publishing LLC, Adam J. Pigott, a/k/a BlaqNmilD, Musical Geniuses Records, LLC, and Freddie Ross, Jr., a/k/a Big Freedia are jointly and severally liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501.

146.

Pursuant to 17 U.S.C. § 504(b), Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as including the substantial profits of Defendants, as will be proven at trial, in an amount not yet ascertained, but which will be determined according to proof.

147.

Plaintiffs are entitled to these Defendants' profits related to foreign sales of copies of "Explode" and the "Just Be Free Album" that were manufactured, distributed, or otherwise infringed within the United States.

148.

Plaintiffs are entitled to royalties for mechanical licenses, master recording licenses, synchronization licenses, merchandising and other revenues arising from the sale, copying, downloading, performance and other commercialization of "Release A Wiggle" works by Defendants.

149.

In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum amount of statutory damages for each act of willful copyright infringement.

150.

Plaintiffs are further entitled to a running royalty on all future exploitations of "Explode" and "Just Be Free" embodying "Release A Wiggle." Plaintiffs are also entitled to costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

### Count Two: Direct, Contributory, and Vicarious Copyright Infringement of By "Break My Soul" "Renaissance World Tour" and the Renaissance: A Film by Be Beyoncé

#### 151.

Da Showstoppaz's incorporates by reference the allegations already made in ¶¶ 1-150, above.

#### 152.

Plaintiffs are, and at all material times hereto have been, the owners of copyrights in the sound recordings and musical compositions and they are entitled to and authorized to protect their sound recordings and compositions against copyright infringement, including through the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. § 106 *et seq.*, among others, "reproduce the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and "to sample their copyrighted works."

#### 153.

Break My Soul's audio recording and video were produced by Defendants prior to June 20, 2022. Upon information and belief, Jay-Z, Tricky Stewart, The Dream, and Mrs. Carter wrote and composed "Break My Soul." The audio recording was produced by Mrs. Carter, who is credited as Executive Producer, along with Tricky Stewart, The Dream. Beyoncé was also credited for vocal production, and Big Freedia was credited with background vocal production for the use of Big Freedia's sample of "Explode."

#### 154.

All Defendants had access to "Release A Wiggle" via You Tube and other sources, as discussed above. Furthermore, Da Showstoppaz's unique and distinctive lyrics and musical composition in "Release A Wiggle" are strikingly similar, meaning that access is presumed, and a claimed defense of "independent creation" is precluded as a matter of law.

155.

Defendants' sampling, copying, and repeated and continuing commercial use and exploitation of Da Showstoppaz's unique and distinctive lyrics and musical composition from the copyrighted works and sound recordings is not within the scope of the "fair use" exception to copyright.

156.

Defendants' unauthorized reproduction, distribution, public performance, display, and creation of the derivative works, "Explode," "Just Be Free," "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

157.

Upon information and belief, since at least June 20, 2022, all Defendants have knowingly and systematically materially contributed to, intentionally induced, and/or caused third parties to infringe Plaintiffs' copyrights, including but not limited to, "Release A Wiggle" by administering and exploiting Plaintiffs' copyrighted lyrics and musical compositions and licensing to third parties the use of Plaintiffs' copyrighted lyrics and musical compositions in violation of Sections 106 *et seq.* and Section 501 of the Copyright Act.

158.

Defendants did not seek or obtain any permission, consent, or license from Plaintiffs for the administration and exploitation of the sound recordings and musical compositions "Release A Wiggle", nor did these Defendants seek permission to license Plaintiffs' copyrighted musical compositions.

159.

Defendants' conduct has at all times been knowing, willful, and with complete disregard to Plaintiffs' rights. Defendants material contributions, intentional inducements and/or causing of copyright infringements by third parties were willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights.

160.

Each infringement by Defendants, Plaintiffs' copyrighted lyrics and musical compositions of "Release A Wiggle" constitutes a separate and distinct act of infringement.

161.

As a proximate cause of these Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

162.

From the date of the creation of the infringing composition, sound recording and video recording "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" Defendants have infringed Plaintiffs' copyright interests in "Release A Wiggle", including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing "Break My Soul" at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the records and digital downloads through the execution of

licenses, and/or actually selling, manufacturing, and/or distributing "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" through various sources; (c) by substantially copying and the related advertising, marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and furthering the aforementioned infringing acts, or sharing in the proceeds therefrom, all through substantial use of "Release A Wiggle" in and as part of ""Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

163.

Plaintiffs have received no copyright ownership interests in, and for any of the exploitations of "Release A Wiggle" or any of the works associated with "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé"

164.

With knowledge of the infringement, Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

165.

Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

166.

As a direct and proximate result of the infringements, Defendants are jointly and severally liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501.

167.

Pursuant to 17 U.S.C. § 504(b), Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as including the substantial profits of Defendants, as will be proven at trial, in an amount not yet ascertained, but which will be determined according to proof.

168.

Plaintiffs are entitled to these Defendants' profits related to foreign sales of copies of "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" that were manufactured, distributed, or otherwise infringed within the United States.

169.

Plaintiffs are entitled to declaratory and injunctive relief, ordering Defendants to credit Da Showstoppaz as a writer, composer, producer and performer for all future reproduction, distribution, sale, public performance, or other use or exploitation of "Explode" "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" that include Da Showstoppaz's intellectual property, or, in the alternative, a continuing royalty following judgment in an amount to be determined.

170.

In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504. In the alternative, Plaintiffs are entitled to the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c), which

should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants willful copyright infringement.

171.

Plaintiffs are further entitled to a running royalty on all future exploitations of "Explode," "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" embodying "Release A Wiggle." Plaintiffs are also entitled to costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**Count Three: Accounting By All Defendants**

172.

Da Showstoppaz's incorporates by reference the allegations already made in ¶¶ 1-171, above.

173.

Under 17 U.S.C. § 504, Plaintiffs may recover any and all profits of Defendants that are attributable to Defendants' acts of infringement.

174.

The exact amount of money due from Defendants is unknown to Plaintiffs and can only be ascertained through an accounting. Plaintiffs seek an order from this Court directing Defendants to provide Plaintiffs with an accounting for "Explode," "Just Be Free," "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé."

**Count Four: Louisiana Unfair Competition/Trade Practices**

175.

Da Showstoppaz's incorporates by reference the allegations already made in ¶¶ 1-174, above.

176.

Plaintiffs assert that Defendants have committed unfair trade practices in violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, et seq., by taking the credit for the coined term and phrase "release a/yo wiggle," which has now become closely synonymous with Big Freedia, thereby contributing to Big Freedia's fame, and converting Plaintiffs' intellectual property to their benefit.

177.

By using and exploiting Da Showstoppaz's words and performance in Explode," "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé" without permission and without compensation, Defendants have gone beyond copyright infringement and have acted unethically, wrongfully and fraudulently, have made misrepresentations, and have profited from the unique, phrasing and manner that defined Da Showstoppaz.

178.

Plaintiffs, Tessa Avie, Keva Bourgeois, Henri Braggs, and Brian Clark a/k/a Da Showstoppaz, are business competitors of Defendants.

179.

Plaintiffs are entitled to compensation for Defendants' unfair trade practices, pursuant to Louisiana Revised Statutes, La. R.S. 51:1409.

180.

In this respect, among others, Plaintiffs' state law claims are qualitatively different than their infringement claims and Defendants should be found liable for under Louisiana's Unfair and

Deceptive Trade Practices Act (LUTPA) and, besides damages, should be ordered to pay Plaintiffs' reasonable attorney's fees under La. R.S. 51:1409.

## Count Five: Unjust Enrichment

181.

Da Showstoppaz's incorporates by reference the allegations already made in ¶¶ 1-180, above.

182.

Plaintiffs assert, in the alternative, that Defendants have been unjustly enriched by their unauthorized use and exploitation of Da Showstoppaz's unique and distinctive lyrics and musical composition from the copyrighted works and sound recordings.

183.

Louisiana Civil Code article 2298 provides, in relevant part, that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person."

184.

Defendants have received millions of dollars in royalties, record sales, download sales, Internet fees, tour income, licensing fees, and merchandising revenues due to their unauthorized use and exploitation of Da Showstoppaz's "release yo/a wiggle" in "Explode" "Break My Soul," "Renaissance," "Renaissance World Tour," and "Renaissance: A Film by Beyoncé," as described above.

185.

Defendants' unauthorized use and exploitation of Da Showstoppaz's unique lyrics and musical composition, has impoverished plaintiffs due to consumers' perception that Da Showstoppaz's consented to Defendants' use of their coined words, which has impaired Da

Showstoppaz's reputation and credibility as an independent artist who worked alone and did not endorse popular singers, such as Mrs. Carter.

186.

To the extent that Plaintiffs cannot obtain compensation for the unauthorized use of unique lyrics and musical composition under the Copyright Act, the Louisiana Unfair Trade Practices Act or other laws, Plaintiffs are entitled to compensation pursuant to the subsidiary remedy for enrichment without cause provided by Louisiana Civil Code article 2298, in an amount to be proven at trial.

**VII.   DEMAND FOR JURY TRIAL**

187.

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiffs respectfully demand a trial by jury.

**VIII.   PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, Tessa Avie, Keva Bourgeois, Henri Braggs, and Brian Clark a/k/a Da Showstoppaz, pray for judgment against Defendants, Beyoncé Knowles Carter, *et al*, and for the following relief, in the alternative:

A. A declaration that Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the Copyright Act;

B. A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C. Declaratory and injunctive relief, ordering Defendants to credit Tessa Avie, Keva Bourgeois, Henri Braggs, and Brian Clark a/k/a Da Showstoppaz as a writer, composer, producer and artist for "Explode" and "Break My Soul" for all future

reproduction, sale, performance, licensing, distribution and exploitation, of works containing their lyrical words, musical arrangements, and melodies.

D. Royalties to be paid on all future exploitations of "Release A Wiggle" in "Explode", "Break My Soul," "Renaissance" or other works embodying Da Showstoppaz Infringed Works, pursuant to an injunction or declaration commencing from the date of judgment and for all amounts not taken into consideration in the judgment;

E. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of Defendants as will be proven at trial, including a finding that Defendants are "practical partners" of each other and jointly and severally liable for the profits of each other, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c) for each act of willful infringement;

F. An award of damages and treble damages for defendants' unfair trade practices, per Louisiana Revised Statutes, La. R.S. 51:1409;

G. An award of damages for unjust enrichment, per Louisiana Civil Code article 2298;

H. An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505, La. R.S. 51:1409, and under other applicable law;

I. For pre-judgment and post-judgment interest according to law, as applicable; and

J. For such other and further relief as this Court may deem just and proper.


Respectfully Submitted,


THE KHAN LAW FIRM, L.L.C.
Shermin S. Khan (Bar Roll No. 37748)
s.khan@sklawla.com
2714 Canal Street, Suite 300

New Orleans, LA 70119
Telephone: (504) 354-9608
Facsimile: (504) 459-2918

**Hussain Law LLC**
Abid M. Hussain, La. Bar No. 34308
3445 N. Causeway Blvd., Suite 706
Metairie, LA 70002
Telephone: (504) 233-2442
Facsimile: (504) 608-6749
E-mail: abid@hussainlaw.com

*Attorneys for Tessa Avie, Keva Bourgeois, Henri Braggs, and Brian Clark a/k/a Da Showstoppaz.*

Dated May 22, 2024.